CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 7 2010

BY: JOHN F. CORCORAN, CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5:06CR00038-007 |
| | ) | Civil Action No. 5:09CV80181 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDRE FERNE SAINT-JEAN, | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

Andre Ferne Saint-Jean, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Saint-Jean has responded, making the matter ripe for the court's disposition. For the reasons that follow, the government's motion to dismiss will be granted and Saint-Jean's motion to vacate will be denied. Additionally, the court will deny Saint-Jean's motion for discovery and his motion for an evidentiary hearing.

**Background**

On September 6, 2006, Saint-Jean and nine co-defendants were charged in a twenty-six-count indictment returned by a grand jury in the Western District of Virginia. Count One charged that, beginning on a date unknown to the grand jury, but not later than January of 2002, and continuing until the date of the indictment, Saint-Jean and the other defendants conspired to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Counts Thirteen and Fourteen charged Saint-Jean with knowingly and intentionally distributing measurable quantities of cocaine base on April 8, 2005 and May 3, 2005, respectively, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Fifteen charged

Saint-Jean with possessing with intent to distribute 10.2 grams of cocaine base on January 1, 2006, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

On January 17, 2007, Saint-Jean entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. Under the terms of the plea bargain, the parties agreed that Saint-Jean should be held responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. The parties also stipulated that Saint-Jean played an aggravating role in the charged conspiracy, and thus, that he should receive a two-level enhancement under § 3B1.1 of the United States Sentencing Guidelines (U.S.S.G.). For its part, the government agreed to move to dismiss the remaining counts of the indictment in which Saint-Jean was charged (Plea Ag. at 2), and to consider filing a substantial assistance motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Plea. Ag. at 6-7). In exchange, Saint-Jean agreed to waive "the right to appeal [his] sentence, including any statutory minimum penalties." (Plea Ag. at 5). Saint-Jean also agreed to waive "[his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, or any other provision of law, the judgment and any part of the sentence imposed upon [him] by the Court." (Plea Ag. at 5).

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Saint-Jean possessed the capacity to make a voluntary, intelligent, and informed decision. In response to questions from the court, Saint-Jean stated under oath that he had completed the twelfth grade, that he was not suffering from a physical or mental problem that would impair his ability to understand or participate fully in the proceeding, and that he was not under the influence of any drugs or intoxicants that would affect his reasoning, comprehension, or communication skills. (Plea Hearing Tr. at 4). The court also

established that Saint-Jean understood the charge to which he was pleading guilty, as well as the purpose for the hearing. (Tr. at 5).

The court then instructed the prosecutor to review the salient portions of the plea agreement that Saint-Jean had reached with the government. In response, the prosecutor outlined several paragraphs of the plea agreement, including paragraphs four and five, in which the parties agreed that Saint-Jean would be held responsible for at least 500 grams but less than 1.5 kilograms of cocaine base, and that he would receive a two-point enhancement for playing an aggravated role in the offense. (Tr. at 7). Although the plea agreement did not specifically reference Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, counsel for both the government and the defendant indicated that it was their intention that the stipulations contained in the two paragraphs would be "binding" under that rule.[1] (Tr. at 9).

The prosecutor also summarized paragraphs nine and ten of the plea agreement. He explained that, pursuant to those paragraphs, the defendant would be waiving "his right to appeal any sentence," and that he would be waiving his "right to bring a habeas corpus action to collaterally attack the judgement [sic] and the sentence." (Tr. at 8). Upon being asked if the prosecutor's summary of the plea agreement was consistent with his own understanding of the agreement, Saint-Jean responded in the affirmative. (Tr. at 10).

The court then questioned Saint-Jean regarding his understanding of particular terms of the plea agreement. Saint-Jean affirmed that he was "giv[ing] up [his] right to appeal [the

---

[1] Under Rule 11(c)(1)(C), the government and a defendant may "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). "[S]uch a recommendation or request binds the court once the court accepts the plea agreement." Id.

3

court's] judgement [sic]." (Tr. at 10). Saint-Jean also affirmed that he was "giv[ing] up [his] right to collaterally attack the court's judgement [sic] at some later time . . . by way of a motion to vacate sentence or a petition for a writ of habeas corpus." (Tr. at 10). Additionally, the court specifically inquired as to whether Saint-Jean was voluntarily pleading guilty. In response, Saint-Jean affirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement, that no one had attempted to force him to plead guilty, and that he was "contemplating a guilty plea based on what [he thought was] best for [him] and what [was] consistent with the weight of the evidence in [his] particular case." (Tr. at 10-11).

The court also questioned Saint-Jean regarding his understanding of the applicable provisions of the advisory sentencing guidelines. Saint-Jean affirmed that he was admitting responsibility for between 500 grams and 1.5 kilograms of crack cocaine, and that he was admitting to having committed an aggravating role in the offense, which would result in an enhancement under the advisory guidelines. (Tr. at 14-15). The court emphasized that both of those stipulations would be binding under Rule 11(c)(1)(C), and that if the court later found that it could not accept the stipulations, it would "have to give both sides the opportunity to withdraw from the plea agreement and plead again." (Tr. 15). The court also explained that it could potentially find, by a preponderance of the evidence, that "some other enhancements might apply in [Saint-Jean's] case that would affect [his] offense level." (Tr. 15).

At the conclusion of the hearing, the court specifically inquired as to whether Saint-Jean was satisfied with his attorney's representation, and as to whether he had any questions regarding anything that had been said during the hearing. Saint-Jean indicated that he was satisfied with

4

the services provided by his attorney, and that he did not have any questions for the court. (Tr. 32).

The court conducted Saint-Jean's sentencing hearing on March 26, 2007. Prior to the hearing, a probation officer prepared a presentence investigation report ("PSR"). In the PSR, the probation officer attributed 1.098 kilograms of cocaine base to Saint-Jean, which was consistent with the amount stipulated in the plea agreement. Based on that amount, the probation officer determined that Saint-Jean had a base offense level of 36 under the United States Sentencing Guidelines. See U.S.S.G. § 2D1.1(c)(3) (2006). Although the parties had also stipulated that Saint-Jean would receive a two-level enhancement for playing an aggravating role in the offense, the probation officer ultimately determined that the circumstances did not warrant the application of that enhancement. Instead, the probation officer determined that Saint-Jean was subject to a two-level enhancement for possessing a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1). The probation officer then subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, which resulted in a total offense level of 35. When coupled with a criminal history category of III, Saint-Jean's total offense level yielded an advisory guideline range of imprisonment of 210 to 262 months.

During the sentencing hearing, the court initially stated, for the record, that the probation officer had found that Saint-Jean was not subject to the two-level role enhancement to which the parties had stipulated in the plea agreement, and that the officer had instead found that Saint-Jean was subject to a two-level firearm enhancement. The court noted that, despite the fact that a different enhancement was applied by the probation officer, the final calculation under the advisory guidelines was ultimately "the same as it would have [been] had the stipulation in the

5

plea agreement been a factor." (Sentencing Tr. at 5-6). The court then inquired of the parties as to whether they believed that the case had been properly reviewed in terms of the advisory guidelines. Counsel for the government and the defendant both responded in the affirmative. Consequently, the court adopted the PSR and determined that the probation officer had correctly assessed the case in terms of the advisory guidelines.

The court also adopted the parties' plea agreement, emphasizing that it would "attempt to implement that agreement, save for [the role-enhancement stipulation]."[2] (Tr. at 7). Prior to adopting the agreement, the court again noted that there was a discrepancy regarding whether the defendant played a leadership role in the conspiracy, but that the discrepancy "ha[d] been resolved in [the defendant's] favor." (Tr. at 7). The court also noted that "there [was] evidence that established by a preponderance of the evidence that [Saint-Jean was] involved with a firearm," and that the resulting guideline range was ultimately the same as that contemplated under the plea agreement. (Tr. at 7).

In the end, the court determined that a sentence "at the very lowest end" of the advisory guideline range was appropriate in Saint-Jean's case. (Tr. 13). Accordingly, the court sentenced him to a term of imprisonment of 210 months. Before the court pronounced the sentence, Saint-Jean was given the opportunity to address the court. At that time, Saint-Jean did not express any

---

[2] The court notes that some appellate courts have held that Rule 11 of the Federal Rules of Criminal Procedure does not permit a district court to accept some portions of a plea agreement, but not others. See, e.g., United States v. Lockwood, 416 F.3d 604, 607 (7th Cir. 2005); United States v. Randock, 330 F. App'x 628 (9th Cir. 2009). As will be discussed, infra, however, to the extent that the court somehow erred in solely rejecting the role-enhancement stipulation contained in the plea agreement, such error was clearly harmless.

desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of his attorney's representation.

Nonetheless, on April 2, 2007, Saint-Jean filed a pro se notice of appeal with this court, in which he claimed that his trial counsel had provided ineffective assistance. Specifically, Saint-Jean alleged that he "never received a motion of discovery," and that "contact was not sufficient." (Docket No. 311).

The United States Court of Appeals for the Fourth Circuit subsequently appointed new counsel to represent Saint-Jean on appeal. In his appellate brief, Saint-Jean argued that he was entitled to resentencing in light of the Supreme Court's decisions in Kimbrough v. United States, 552 U.S. 85 (2007), and Gall v. United States, 552 U.S. 38 (2007), and that the appeal waiver in his plea agreement did not foreclose appellate review.

On February 22, 2008, this court gave notice of its intent to reduce Saint-Jean's term of imprisonment, pursuant to 18 U.S.C. § 3582(c) and Amendment 706 of the United States Sentencing Guidelines.[3] The court received and reviewed written responses from both parties, and on May 14, 2008, entered an order reducing Saint-Jean's term of imprisonment to 168 months.

In light of Saint-Jean's sentence reduction, the government moved to dismiss his direct appeal as moot. The Fourth Circuit ultimately granted the government's motion and dismissed the appeal on October 23, 2008. The Court's judgment was entered on that date.

---

[3] Amendment 706, which was made effective November 1, 2007, and retroactive effective March 3, 2008, "amended § 2D.1 of the Sentencing Guidelines by reducing the offense levels associated with crack cocaine quantities by two levels." United States v. Hood, 556 F.3d 226, 232 (4th Cir. 2009).

On February 12, 2009, more than 90 days after the Fourth Circuit's entry of judgment, Saint-Jean's appellate counsel filed a petition for writ of certiorari in the United States Supreme Court, in which he raised the issue of whether this court erred in applying the two-level firearm enhancement.[4] The petition was summarily denied by the Supreme Court on March 23, 2009.

Saint-Jean filed the instant § 2255 motion on September 3, 2009. Liberally construed, the motion asserts the following claims:

1. The court erred by applying the two-level enhancement for possessing a firearm;

2. Saint-Jean's trial counsel was ineffective in failing to object to the enhancement; and

3. Saint-Jean's appellate counsel was ineffective in failing to properly raise the issue on direct appeal.

On December 23, 2009, the government moved to dismiss Saint-Jean's § 2255 motion, arguing, inter alia, that the motion is untimely, that it is barred by the waiver of collateral attack rights contained in the plea agreement, and that the motion is without merit. Saint-Jean filed a response to the motion on January 14, 2010. He has also filed a motion for discovery and a motion for an evidentiary hearing. The matter is now ripe for review.

## Discussion

### I. Motions for Discovery and an Evidentiary Hearing

Discovery is extremely limited in habeas corpus proceedings. See Bracy v. Gramley, 520 U.S. 899, 909-909 (1997). Pursuant to Rule 6(a) of the Rules Governing Section 2255

---

[4] The court notes that a petition for writ of certiorari must be filed within 90 days after entry of judgment. See Sup. Ct. R. 13. "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." Id.

Proceedings, a petitioner must seek leave of court and demonstrate "good cause" before he is entitled to any form of discovery. Additionally, the rule specifically provides that "[a] party requesting discovery must provide reasons for the request," and that the request "must specify any requested documents." See Rule 6(b) of the Rules Governing Section 2255 Proceedings. In this case, Saint-Jean's motion does not contain any particular reasons for discovery, request specific documents, or otherwise demonstrate good cause as required by Rule 6. Consequently, the motion for discovery must be denied.

Likewise, the court must deny his request for an evidentiary hearing. Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the court must review the government's responsive pleading and any material submitted by the parties and determine whether an evidentiary hearing is warranted. Following such review in this case, it is clear from the record that Saint-Jean is not entitled to relief on any of his claims, and thus, that an evidentiary hearing is not required.

## II. **Motion to Vacate**

### A. **The Timeliness of the Motion**

In moving to dismiss Saint-Jean's § 2255 motion, the government first argues that the motion should be summarily dismissed as untimely. For the following reasons, however, the court concludes that Saint-Jean's motion was timely filed.

Motions to vacate under § 2255 are subject to a one-year period of limitation, which generally begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f). For federal criminal defendants who do not file a timely petition for certiorari on direct review, their conviction becomes final, and thus, the one-year limitation period begins

to run, when the time for seeking such review expires. See Clay v. United States, 537 U.S. 522,

524 (2003); see also Edwards v. United States, 295 F. App'x 320, 321 (11th Cir. 2008) (holding

that an untimely petition for writ of certiorari in the Supreme Court does not toll the time for

filing a § 2255 motion). In this case, the one-year period of limitation began to run on

January 21, 2009, ninety days after the Fourth Circuit entered its judgment on direct appeal. See

n. 4, supra. Since Saint-Jean's § 2255 motion was filed less than one year later, on September

3, 2009, the motion is clearly timely.[5]

### B. The Waiver of Collateral-Attack Rights

The government alternatively argues that Saint-Jean's § 2255 motion is barred by the

waiver of collateral-attack rights contained in the plea agreement. As previously stated, pursuant

to the plea agreement, Saint-Jean waived "his right to collaterally attack, pursuant to Title 28,

United States Code, Section 2255 or any other provision of law, the judgment and any part of the

sentence imposed upon [him] by the court." (Plea Ag. at para. 10). For the following reasons,

the court agrees with the government that the waiver is valid and enforceable, and that Saint-

Jean's claims are barred by the waiver.

Where the government seeks to enforce a waiver of appellate or collateral-attack rights

and the defendant does not contend that the government breached the plea agreement, the waiver

---

[5] In challenging the timeliness of Saint-Jean's motion, the government argues that the one-year period of limitation began to run following his resentencing in May of 2008, and that Saint-Jean never appealed from the amended judgment. However, when a federal prisoner is resentenced under § 3582(c), the period of limitation for filing a § 2255 motion is not affected. Under 18 U.S.C. § 3582(b), the defendant's original judgment of conviction remains the final judgment "for all other purposes," even if the defendant's sentence is modified pursuant to § 3582(c). See United States v. Saunders, 247 F.3d 139, 143 (4th Cir. 2001) (noting that the plain language of § 3582(b) makes clear that the fact that a sentence can be modified pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure or § 3582(c) does not affect the finality of the conviction and sentence "for all other purposes").

will be enforced if the record shows that the waiver is valid and that the challenged issues fall within the scope of the waiver. United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). The Fourth Circuit has held that a waiver of collateral-attack rights is valid as long as the waiver is knowingly and voluntarily made. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused" during the plea colloquy. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). Generally, if a district court fully questions a defendant during the Rule 11 hearing regarding his waiver of collateral-attack rights, the waiver is both valid and enforceable. See United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005); United States v. Wessells, 936 F.2d 165, 167-168 (4th Cir. 1991). However, an otherwise valid waiver will not be enforced "if the government breached the plea agreement containing that waiver." United States v. Cohen, 459 F.3d 490, 495 (4th Cir. 2006).

Having reviewed the record in this case, the court concludes that Saint-Jean's waiver of collateral-attack rights was knowing and voluntary. During the Rule 11 hearing, the court fully questioned the defendant regarding his intent to waive his right to collaterally attack the judgment or sentence imposed by the court. Saint-Jean affirmed that he understood the plea agreement, and that he knew that he was "giv[ing] up [his] right to collaterally attack the court's judgement [sic] at some later time . . . by way of a motion to vacate sentence or a petition for a writ of habeas corpus." (Plea Tr. at 10). Saint-Jean also testified that no one had forced him to enter into the plea agreement or to enter a plea of guilty, and that no one had made any promises other than those included as terms of the plea agreement. Saint-Jean's testimony at the plea

hearing conclusively establishes that he understood the terms of the plea agreement, including the waiver of collateral-attack rights, and that the waiver is valid and enforceable.

Additionally, it is apparent from the record that each of the claims raised in Saint-Jean's § 2255 motion – whether the court erred in enhancing his offense level for possessing a firearm, and whether his trial and appellate counsel were ineffective for failing to challenge the propriety of the enhancement – are within the scope of the waiver of collateral-attack rights. While the Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver, none of Saint-Jean's claims fall within that class.[6] Consequently, it is clear that, unless the government breached the plea agreement, Saint-Jean's claims are barred by the waiver.

It is well-established that plea agreements are grounded in contract law, and that "each party should receive the benefit of its bargain." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994) (internal citation and quotation marks omitted). "A central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself." Id. Accordingly, "the government's duty in carrying out its obligations under a plea agreement is no greater than that of 'fidelity to the agreement.'" Id. Stated differently, "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make." United States v. Fentress, 792 F.2d 461, 464-465 (4th Cir. 1986).

---

[6] Issues that a defendant could not have reasonably foreseen when entering into a plea agreement, such as the imposition of a sentence above the statutory maximum, the imposition of a sentence based on an constitutionally impermissible factor such as race, United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992), or the complete denial of counsel at any stage of the proceedings following the entry of the plea, United States v. Attar, 38 F.3d 727, 732-733 (4th Cir. 1994), fall outside the scope of the waiver.

In response to the government's motion to dismiss, Saint-Jean asserts that the government breached the plea agreement by not objecting to the application of the two-level enhancement for possessing a dangerous weapon, and that the court violated the agreement by applying the enhancement. Saint-Jean's assertions, however, are unsupported by the record. As previously stated, Saint-Jean's plea agreement contained only two stipulations concerning the application of the sentencing guidelines. Specifically, the parties stipulated that the defendant would be held accountable for between 500 and 1.5 kilograms of cocaine base, for purposes of U.S.S.G. § 2D1.1, and that the defendant would receive a two-level role enhancement under § 3B1.2. The plea agreement contained no agreement by the government to refrain from seeking a firearm enhancement or any other enhancement under the advisory guidelines, and the parties acknowledged that "[t]he determination of any other offense characteristics applicable to [the defendant would be] left for the determination of the district court at sentencing."[7] (Plea Ag. at 3). Accordingly, during the Rule 11 hearing, the court specifically advised Saint-Jean that it "may [ultimately] determine that some other enhancements might apply in [his] case that would affect [his] offense level." (Plea Hearing Tr. at 15). When asked if he understood that other

---

[7] Throughout his various filings, Saint-Jean refers to unnumbered paragraph seven of the plea agreement, in which the government agreed to move to dismiss the remaining counts of the indictment upon acceptance of Saint-Jean's plea of guilty. Although he asserts that a firearm offense was dismissed by the court pursuant to that paragraph, Saint-Jean was not charged with violating 18 U.S.C. § 924(c) or any other statutory provision that proscribes similar conduct. Instead, Saint-Jean was only charged in the conspiracy count to which he pled guilty and three substantive counts of distributing and/or possessing with intent to distribute cocaine base.

Nonetheless, even if Saint-Jean had been charged with violating § 924(c), and even if such charge was dismissed pursuant to unnumbered paragraph seven, the court would not have been barred from considering the relevant conduct for purposes of evaluating the defendant's case under the applicable sentencing guidelines. See United States v. Barber, 119 F.3d 276, 283-284 (4th Cir. 1997) (noting that "the court may consider, without limitation, any information concerning the . . . conduct of the defendant," including "dismissed, uncharged, or [even] acquitted conduct").

enhancements might be found to apply, Saint-Jean responded in the affirmative. (Plea Hearing

Tr. at 15). Saint-Jean also affirmed that no promises or representations had been made to him,

other than those contained in the written plea agreement. (Plea Hearing Tr. at 11). For these

reasons, it is clear from the record that the government did not breach its agreement with the

defendant by failing to object to the application of the firearm enhancement, and that the court

did not violate the parties' agreement by applying the enhancement.

To the extent that the court erred by rejecting the parties' stipulation in the plea

agreement pertaining to the two-level role enhancement under U.S.S.G. § 3B1.1, such error was

clearly harmless and did not affect the validity of the defendant's waiver of collateral-attack

rights. As previously noted, some appellate courts have held that Rule 11 does not permit a

district court to reject particular portions of a plea agreement and accept other portions. See, e.g.,

United States v. Lockwood, 416 F.3d 604, 607 (7th Cir. 2005) ("Rule 11 does not . . . allow for

piecemeal acceptance of some portions of the plea agreement but not others."); United States v.

Randock, 330 F. App'x 628, 630 (9th Cir. 2009) (same). Nonetheless, violations of Rule 11 are

considered "harmless," and thus, disregarded, if they "do[] not affect [the defendant's]

substantial rights." Fed. R. Crim. P. 11(h); see also United States v. Cason, 94 F. App'x 982,

983 (4th Cir. 2004) ("Any variance from the Rule 11 requirements that does not affect the

substantial rights of the defendant is disregarded."). In this case, it is clear from the record that

the court's rejection of the role enhancement stipulation did not affect Saint-Jean's substantial

rights, since the court's decision was favorable to Saint-Jean. Indeed, as a result of the court's

decision, Saint-Jean's total offense level, and his resulting guideline range, were lower than they

would have been if the court had applied the role enhancement to which the parties stipulated, in

14

addition to the firearm enhancement recommended in the presentence report.  Consequently, any error that resulted from the court's decision was clearly harmless, and, thus, does not preclude enforcement of the valid waiver of collateral-attack rights.  See, e.g., United States v. Dade, 29 F. App'x 135, 138 (4th Cir. 2002) (enforcing a waiver of appellate rights notwithstanding the court's violation of Rule 11, since the violation was harmless).

Based on the foregoing, the court concludes that Saint-Jean's waiver of collateral-attack rights is valid and enforceable, and that the claims asserted in his § 2255 motion are barred by the waiver.

### C.     The Merits of the Defendant's Claims

The court also concludes that Saint-Jean's claims are subject to dismissal on the merits. All three claims pertain to the firearm enhancement that Saint-Jean received pursuant to § 2D1.1 of the United States Sentencing Guidelines.  Section 2D1.1(b)(1) directs a district court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the offense.  U.S.S.G. § 2D1.1(b)(1). According to the guideline commentary, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n. 3.  The Fourth Circuit has held that the enhancement is appropriate when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction."  United States v. McAllister, 272 F.3d 228, 233-234 (4th Cir. 2001).

In this case, the firearm enhancement was recommended in the presentence report

prepared by the defendant's probation officer. The facts supporting the recommendation were

summarized as follows:

> As the investigation began to turn to the defendant, Andre Saint-Jean, it
> was learned that he was a substantial dealer of crack cocaine in the
> Winchester, Virginia, area beginning in at least 2003. As intelligence was
> developed, it became clear that he had developed a large customer base
> which included both street level dealers and users, to whom he often sold
> narcotics on credit, or "on the front." Although some witnesses profess to
> having witnessed the defendant provide or receive ounce or more
> quantities, he typically dealt in gram to one-eighth ounce quantities.
> Further, at least five witnesses have described Saint-Jean's possession of
> firearms and body armor during these same time frames.

(PSR at para. 30). Such facts were clearly sufficient to support the application of the firearm

enhancement. Moreover, because Saint-Jean did not object to the report's factual findings at the

sentencing hearing, "the government [met] its burden of proving those facts by a preponderance

of the evidence," and the court was "free to adopt the findings . . . without more specific inquiry

or explanation." United States v. Revels, 455 F.3d 448, 451 n. 2 (4th Cir. 2006) (internal

citations omitted); see also United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) ("[T]he

Government carries its burden if a defendant fails to properly object to a recommended finding in

a presentence report that the court determines to be reliable.").

In the instant motion, Saint-Jean does not deny that he possessed a firearm or dispute the

accuracy of the facts summarized in the presentence report. Instead, Saint-Jean merely argues

that the court erred in applying the enhancement, and that his attorneys were ineffective in failing

to challenge the enhancement, since "it had been agreed via a plea agreement that said

enhancement was to be dismissed." (Def.'s Br. at pg. 5, Docket No. 474). However, as

previously explained, the plea agreement contained no agreement by the government to refrain from seeking a firearm enhancement or any other enhancement under the advisory guidelines, and the parties acknowledged that "[t]he determination of any other offense characteristics applicable to [the defendant would be] left for the determination of the district court at sentencing." (Plea Ag. at 3). Consequently, Saint-Jean has failed to demonstrate that the court erred in applying the firearm enhancement, or that his counsel rendered ineffective assistance. See Strickland v. Washington, 466 U.S. 668, 687-688, 694 (1984) (holding that for an ineffective assistance of counsel claim to be established, a defendant must show (1) that his counsel's performance was deficient, and (2) that, but for counsel's error, the outcome of the proceedings would have been different).

### Conclusion

For the reasons stated, the court will grant the government's motion and deny the defendant's motions. Additionally, because the defendant has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 17ᵗʰ day of February, 2010.

_____
United States District Judge

17